## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

HAROLD JON JACKSON, JR,                    Case No: 25-42744-PRH
                                           Chapter 13
        Debtor.                            Judge Paul R. Hage
_____/

## MEMORANDUM OPINION REGARDING MOTION FOR *IN REM* RELIEF FROM THE AUTOMATIC STAY

### I.    Introduction

In 1934 the United States Supreme Court articulated what is perhaps the primary purpose of our country's consumer bankruptcy laws, specifically: "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). The Supreme Court continued: "This purpose … has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Id.*

The debtor in the present case "is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *Marrama*

1

*v. Citizens Bank of Massachusetts*, 549 U.S. 365, 374 (2007) (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). To the contrary, Harold Jon Jackson, Jr. (the "Debtor") is part of a group of individuals who have commenced no fewer than eight different bankruptcy cases seeking to stave off a state court eviction action by the lawful owner of a parcel of real property located at 16781 Huntington Road, Detroit, Michigan 48219 (the "Property") where the individuals have claimed to reside. As detailed below, these individuals have failed to meaningfully prosecute any of their bankruptcy cases, resulting in the eventual dismissal of such cases. Frivolous litigation commenced by these parties with respect to the Property has continued for close to a decade in nearly every conceivable state and federal forum in the State of Michigan, all to no avail. It is time for such litigation, and the corresponding abuse of the bankruptcy system, to come to an end.

Before the Court is the *Motion for In Rem Relief from the Automatic Stay and Request to Have Motion Heard Before Bankruptcy is Dismissed* [Doc. No. 26] (the "Motion") filed by Wells Fargo Bank, N.A. (the "Movant"). Movant acquired legal title to the Property by way of a sheriff's deed after a foreclosure sale in 2016. Movant has repeatedly sought and obtained stay relief with respect to the Property in prior cases filed by Debtor and others, only to have its state court eviction action repeatedly delayed and hindered due to a subsequent bankruptcy filing by a different individual in what Movant characterizes as a game of "whack a mole."

2

The Court joins its predecessors in finding that cause exists under sections 362(d)(1) and (d)(2) of the Bankruptcy Code[1] to grant Movant relief from the automatic stay. The Court will go a step further though. It holds that *in rem* stay relief pursuant to sections 362(d)(4) and 105(a) is entirely appropriate and equitable given the ongoing scheme to hinder, delay or defraud Movant from exercising its rights and remedies with respect to the Property. This *in rem* relief will have the effect of precluding future bankruptcy filings from impacting the Property.

## II.     Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (e). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (O).

## III.     Factual Background[2]

On February 3, 2005, an individual named Ernest P. Cornelius accepted a loan in the original principal amount of $123,800. The loan was secured by a mortgage on the Property, and such mortgage was recorded on February 28, 2005 with the Wayne County Register of Deeds. On March 17, 2016, the mortgage was foreclosed and the Property was purchased by Movant at a sheriff's sale. A sheriff's deed reflecting Movant's purchase of the Property was recorded with the Wayne County

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.* Specific chapters of the Bankruptcy Code are identified herein as "chapter __" and specific sections of the Bankruptcy Code are identified herein as "section __." Similarly, specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __."

[2] The facts set forth herein have not been disputed in any material way by the parties.

3

Register of Deeds and, upon the expiration of the statutory redemption period on September 17, 2016, title to the Property vested in Movant.

### a. Bankruptcy Case No. 1 – Doshia Banks [Case No. 17-44399-MLO]

When Movant moved to take possession of the Property, the first of many *pro se* bankruptcy cases involving the Property was filed by Doshia Banks on March 27, 2017 [Case No. 17-44399].[3] Ms. Banks filed for relief under chapter 13. She identified the Property as her principal residence on her bankruptcy petition.

On April 21, 2017, Movant filed a motion for relief from the automatic stay [Doc. No. 32] with respect to the Property so that it could proceed with its state court efforts to obtain possession of the Property.[4] Movant's stay relief motion was granted on June 6, 2017 [Doc. No. 72].[5] No plan was confirmed in Ms. Banks' first bankruptcy case and the case was dismissed on June 6, 2017 [Doc. No. 74] due to her failure to make any chapter 13 plan payments to the chapter 13 trustee.

---

[3] This was not Ms. Banks' first bankruptcy filing. Far from it; she has personally filed at least eight bankruptcy cases in this district alone. It does appear, however, that Case No. 17-44399 was Ms. Banks' first case implicating the Property.

[4] Ms. Banks filed a *Motion and Request for Hearing to Show Cause Why Creditors Wells Fargo Bank, Gerner and Kerns, PLLC and 36th District Court Judge Should Not Be Held in Contempt for Violating the Automatic Stay and for Sanctions* [Doc. No. 20] shortly after the commencement of this bankruptcy case. Movant responded to this motion [Doc. No. 30]. Ms. Banks requested adjournment of the hearing on the stay relief motion and her sanctions motion due to alleged medical appointments [Doc. No. 58]. The bankruptcy court denied the adjournment request because movant had failed to provide verification of any medical appointments [Doc. No. 60]. Ultimately the bankruptcy court denied the sanctions motion on June 2, 2017 [Doc. No. 65].

[5] Ms. Banks appealed the order granting stay relief but such appeal was dismissed as moot by the United States District Court for the Eastern District of Michigan [Case No. 17-11968-LJM] on February 27, 2018.

4

### b. Bankruptcy Case No. 2 – Doshia Banks [Case No. 21-40945-MLO]

Upon the dismissal of Ms. Banks' first bankruptcy case, Movant brought a complaint to quiet title with respect to the Property against Ms. Banks and others in Wayne County Circuit Court in a suit captioned *Wells Fargo Bank, N.A. v. Doshia Banks, Ernest Cornelius, Williams Family Trust and Otis Williams III* [Case No. 18-007928-CH]. The quiet title action was resolved in Movant's favor as: (i) on September 18, 2019, the state court entered an *Order Granting Plaintiff's Motion for Entry of Default Judgment* granting a default judgment against Ernest Cornelius, the Williams Family Trust and Otis Williams III and quieting title to the Property in favor of Movant, and (ii) on November 12, 2020, an order was entered upon the stipulation of Ms. Banks and Movant terminating Ms. Banks' interest in the Property and, once again, quieting title in the name of Movant.

On January 21, 2021, Movant filed a motion to reopen the quiet title action to correct a typographical error in the November 12, 2020 order.[6] That motion was scheduled to be heard on February 4, 2021. However, the day before that hearing,

---

[6] After numerous litigation related delays, this typographical error was finally corrected by the Wayne County Circuit Court pursuant to its *Order to Reopen Case, First Amended Order to Quiet Title, and Order Enforcing Settlement Agreement and Expunging Instruments From Wayne County Register of Deeds* entered on December 9, 2022. The order expressly holds that "title to the Property is quieted in the name of Wells Fargo Bank, N.A." It also ordered Ms. Banks to "cease and desist from recording instruments with the Wayne County Register of Deeds related to the Property." The order was subsequently affirmed on appeal by the Michigan Court of Appeals on April 25, 2025. *See Wells Fargo Bank, N.A. v. Doshia Banks, Ernest Cornelius, Williams Family Trust, and Otis Williams III*, 2024 WL 1826043 (Mich. App. April 25, 2025).

Ms. Banks filed another chapter 13 bankruptcy case [Case No. 21-40945]. She again identified the Property as her principal residence in her bankruptcy filings.

On March 23, 2021, Movant filed its second motion for relief from the automatic stay [Doc. No. 42] with respect to the Property.[7] The bankruptcy court granted this motion and lifted the automatic stay on May 10, 2021 [Doc. No. 77].[8] No plan was confirmed in Ms. Banks' second bankruptcy case and the case was dismissed on August 3, 2021 [Doc. No. 114] due to her failure to pay the filing fee that all debtors must pay to the court under 28 U.S.C. § 1930.[9]

### c. Bankruptcy Case No. 3 – Harold J. Jackson, Jr. [Case No. 21-49742-TJT]

On November 29, 2021, Movant commenced a summary proceeding action seeking an eviction order with respect to any individuals residing at the Property in

---

[7] Also in this bankruptcy case, Ms. Banks filed an adversary complaint against Movant [Adv. Pro. No. 21-04091] seeking to procure an injunction to prevent Movant from taking any actions against the Property and asking the bankruptcy court to determine the rights of the parties in the Property. After several unsuccessful delay tactics were pursued by Ms. Banks, the bankruptcy court dismissed the adversary proceeding pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on July 21, 2021[Doc. No. 48].

[8] Ms. Banks again appealed the order granting stay relief and such appeal was again dismissed as moot by the United States District Court for the Eastern District of Michigan [Case No. 21-11132-LJM] on April 6, 2022.

[9] Following the dismissal of her second chapter 13 case, and while her appeal on the stay relief order was pending, Ms. Banks filed a quiet title action related to the Property in the United States District Court for the Eastern District of Michigan [Case No. 21-11778-LJM] on August 2, 2021. Movant filed a motion to dismiss that action which was granted by the court on May 6, 2022 [Doc. No. 28]. In granting the motion to dismiss, Judge Laurie J. Michelson noted the considerable litigation that had already occurred with respect to the Property and stated that "only Wells Fargo held proper title to the home." *See Opinion and Order Granting Wells Fargo's Motion to Dismiss and Denying Wells Fargo's Motion for Sanctions* [Doc. No. 28] at p. 11.

6

the 36th District Court for the City of Detroit, captioned *Wells Fargo Bank, N.A., as Indenture Trustee v. Ernest P. Cornelius and Any and All Occupants of 16781 Huntington Road, Detroit, MI 48219* [Case No. 21-356348-LT] (the "Eviction Action"). A hearing in the Eviction Action was scheduled but, on December 17, 2021, Debtor filed his first bankruptcy case involving the Property [Case No. 21-49742], which stayed the Eviction Action.

Debtor's first bankruptcy case followed a pattern that was nearly identical to Ms. Banks' prior bankruptcy filings. The Debtor's chapter 7 bankruptcy petition was filed *pro se* and identified the Property as his principal residence.

Shortly after the case was filed, Movant filed a *Motion for Relief From The Automatic Stay and for Other Relief* [Doc. No. 37], its third such motion with respect to the Property, asserting that Debtor had no interest in the Property.[10] Debtor opposed stay relief [Doc. No. 40]. At the hearing on the motion, Debtor asserted that

---

[10] On February 28, 2022, Debtor filed a *Motion and Request for Hearing to Show Cause Why Creditors Wells Fargo Bank, N.A., Trott Law and 36th District Court Judge Should Not Be Held In Contempt for Violating the Automatic Stay and for Sanctions* [Doc. No. 29]. This pleading is strikingly similar to the sanctions motion filed and rejected in Ms. Banks' first bankruptcy case nearly five years earlier. The bankruptcy court denied this motion without a hearing on March 2, 2022 [Doc. No. 33] holding that it was procedurally improper and that it failed to articulate any action by Movant, its counsel or the state court that violated the automatic stay.

The similarities continue. As Ms. Banks had done, Debtor filed an adversary complaint against Movant [Adv. Pro. No. 22-04083] seeking to procure an injunction to prevent Movant from taking any actions against the Property and asking the bankruptcy court to determine the rights of the parties in the Property. The bankruptcy court dismissed this adversary proceeding *sua sponte* because the claims asserted, if meritorious, were property of the bankruptcy estate and, thus, could only be prosecuted by the chapter 7 trustee appointed in that case. No such claims were ultimately prosecuted by the chapter 7 trustee.

7

he had a $10,000 "claim against the Property" related to web design services that he allegedly performed for Ms. Banks [Doc. No. 46]. Remarkably, he disputed that Movant had any interest in the Property. The court entered an *Order Granting Relief From the Automatic Stay and Waiving the Provision of FRBP 4001(a)(3)* [Doc. No. 45] granting stay relief, for cause, in favor of Movant on April 20, 2022.[11]

Debtor's first bankruptcy case was terminated without a discharge being granted on June 14, 2022 [Doc. No. 85] because the Debtor failed to submit the certificate of personal financial management required by Bankruptcy Rule 1007(c).

### d. Bankruptcy Case No. 4 – Harold J. Jackson, Jr. [Case No. 22-45561-TJT]

Upon the termination of Debtor's first bankruptcy case, Movant moved to reopen the Eviction Action in Wayne County Circuit Court. On July 18, 2022, just two days before the scheduled hearing on that motion, Debtor filed his second bankruptcy case [Case No. 22-45561], this time under chapter 13, which stayed the Eviction Action once again.

As in the prior case, Debtor identified the Property as his principal residence. On October 7, 2022, Debtor again filed a *Motion and Request for Hearing to Show Cause Why Creditors Wells Fargo Bank, N.A., Trott Law and 36th District Court*

---

[11] As Ms. Banks had done in her bankruptcy cases, Debtor appealed the bankruptcy court's stay relief order [Doc. No. 49]. This appeal fared no better than Ms. Banks' prior appeals. It was dismissed by the United States District Court for the Eastern District of Michigan [Case No. 22-10937-TGB] on October 13, 2022.

*Judge Should Not Be Held In Contempt for Violating the Automatic Stay and for Sanctions* [Doc No. 40]. No hearing on such motion was held. Rather, the bankruptcy court dismissed the case on January 12, 2023 [Doc. No. 46] because, among other defects, Debtor had failed to make a single monthly payment to the chapter 13 trustee for the benefit of his creditors during the seven months that the case was pending.

### e. Bankruptcy Case No. 5 – Doshia Banks [Case No. 23-40537-MLO]

Movant again sought to reopen the Eviction Action, but eight days after Debtor's second bankruptcy case was dismissed, on January 20, 2023, Ms. Banks filed her third bankruptcy case involving the Property [Case No. 23-40537-MLO].[12] Ms. Banks once again listed the Property as her principal residence.

---

[12] Ms. Banks filed yet another bankruptcy case on May 19, 2025 [Case No. 25-45106-MLO]. This time, Ms. Banks claims to reside in a million dollar home located at 5779 Pinecrest Estate Drive, Ann Arbor, MI 48105. Shortly after that case was filed, the United States Trustee filed its *Motion to Dismiss, Bar Refilings, and For In Rem Relief Against Real Property* [Doc. No. 27]. In the introduction to such motion, the United States Trustee alleges:

> [Ms. Banks] is involved in, and may be the primary perpetrator for, a fractional interest foreclosure rescue scheme to keep a million-dollar luxury home from being foreclosed upon. Ms. Banks is the third individual to file a bankruptcy petition in the last year who claims to live in the property. She is also a well-known bankruptcy petition preparer who was so unwilling to abide by federal bankruptcy laws [that] she had an arrest warrant issued for her, and she was permanently barred from serving as a petition preparer in the Eastern District of Michigan. This filing, like all the others before it related to the same property, is filed in bad faith and for no legitimate bankruptcy purpose, but instead merely seeks the automatic stay and its inherent delay in foreclosing against real property. Ms. Banks' case should therefore be dismissed, she should be barred from refiling future bankruptcy cases, and the Court should issue *in rem* relief against the luxury home, preventing Ms. Banks or others from attempting to tie up foreclosure on the home in a similar manner.

While the scheme in Ms. Banks' most recent bankruptcy case does not implicate the Property, it is notable that such scheme is nearly identical to the scheme existing in this case. On June 16,

On January 31, 2023, Movant filed yet another motion for relief from the automatic stay with respect to the Property [Doc. No. 21]. Unlike its prior stay relief motions, this time Movant alleged that the bankruptcy filing was part of a fraudulent scheme involving Ms. Banks and sought *in rem* stay relief under section 362(d)(4). Ms. Banks filed a non-substantive response to the motion on February 14, 2023 [Doc. No. 45]. But no hearing on the motion was held because the case was dismissed on February 17, 2023 due to Ms. Banks' failure to file certain bankruptcy schedules and her statement of financial affairs, all of which must be filed under Bankruptcy Rule 1007 [Doc. No. 55].

Following dismissal of Ms. Banks' third bankruptcy case involving the Property, Movant again sought to reopen the Eviction Action. Such action was reopened on April 5, 2023. However, at that time, two new third parties, Ernest Cornelius and a Joseph Jones, removed the Eviction Action to the United States District Court for the Eastern District of Michigan [Case No. 23-10938-DPH]. Movant filed a motion to remand the Eviction Action back to the state court and, nearly a year later, on March 31, 2024, such motion was granted.

---

2025, Judge Maria Oxholm issued a bench opinion in that case granting the owner of the real property's motion for relief from the automatic stay and imposing an *in rem* bar to future filings with respect to that parcel of real property, concluding that the bankruptcy filing was part of a scheme to hinder, delay or defraud the owner of that property.

Movant thereafter sought once again to reopen the Eviction Action in Wayne County Circuit Court. An order granting this request was entered on April 15, 2024. At that time, another third party, Otis Williams III, appeared and claimed to have an interest in the Property.

### f. Bankruptcy Case No. 6 – Otis Williams, III [Case No. 24-44431-MLO]

On May 2, 2024, Mr. Williams filed a chapter 13 bankruptcy case [Case No. 24-44431]. On his initial bankruptcy petition [Doc. No. 1], Mr. Williams listed his residential address as 182 Pasadena, Detroit, Michigan 48203. Four days later, after discovering his mistake, Mr. Williams filed an amended bankruptcy petition [Doc. No. 10], this time claiming to reside at the Property. As a result, the Eviction Action was once again stayed and closed.

Mr. Williams' first case was dismissed on May 20, 2024 due to his failure to file the documents that all chapter 13 debtors are charged with filing at the very beginning of their case (*e.g.,* certificate of budget and credit counseling, chapter 13 plan, chapter 13 statement of income and expenses and bankruptcy schedules) under Bankruptcy Rule 1007. Mr. Williams immediately moved to reinstate his case and such request was granted by the bankruptcy court on May 22, 2024 [Doc. No. 18].

On July 15, 2024, Movant filed a motion seeking relief from the automatic stay for cause as well as *in rem* relief with respect to the Property [Doc. No. 32]. Mr. Williams failed to attend the confirmation hearing scheduled for July 22, 2024 in his

case. At that hearing, the chapter 13 trustee orally moved for dismissal of the case based on Mr. Williams' failure to appear as well as his failure to pay the filing fee required under 28 U.S.C. § 1930 or make any chapter 13 plan payments. The bankruptcy court granted the oral motion, dismissing the case [Doc. No. 35].

Mr. Williams sought reinstatement of his case once again and the bankruptcy court again granted that request [Doc. No. 42]. Movant refiled its motion for relief from the automatic stay and for *in rem* relief [Doc. No. 47] only to be hindered in obtaining such relief by the third and final dismissal of the case on November 5, 2024 [Doc. No. 57] due to Mr. Williams' failure to make any payments to the chapter 13 trustee during the seven months that his case languished in chapter 13.

### g. Bankruptcy Case No. 7 – Otis Williams, III [Case No. 25-40365-MLO]

Movant again tried to reopen the Eviction Action, but on January 15, 2025, two days before the hearing on the motion to reopen that action, Mr. Williams filed a second chapter 13 case wherein he once again claimed to reside at, and have an ownership in, the Property [Case No. 25-40365].

Movant again filed a motion for relief from the automatic stay for cause and for *in rem* stay relief [Doc. No. 11] on January 17, 2025. This motion was never heard by the court as the bankruptcy case was dismissed on February 13, 2025 due to Mr. Williams' failure to timely file certain bankruptcy schedules, his plan and his statement of financial affairs [Doc. No. 35].

### h. Bankruptcy Case No. 8 – Harold J. Jackson, Jr. [Case No. 25-42744-PRH]

Movant again sought to reopen the Eviction Action and an order granting the motion to reopen was entered. A pre-trial hearing in the Eviction Action was scheduled for March 20, 2025. Movant alleges that, at that hearing, Debtor appeared and advised the court that he resided at the Property, that he had commenced the current bankruptcy case one day earlier, and that, as a result, the Eviction Action once again was stayed.

The present bankruptcy case bears many of the characteristics of the prior bankruptcy cases detailed above. Filing *pro se*, Debtor listed the Property as his personal residence on his bankruptcy petition [Doc. No. 1]. In response to question 11 on the petition, "Do you rent your residence?," Debtor states "Yes." *Id.*

Debtor filed an *Application for Individuals to Pay the Filing Fee In Installments* [Doc. No. 5] seeking to pay the chapter 13 filing fee that must be paid by all debtors in installments. As it frequently does, the Court entered an *Order Approving Payment of Filing Fee In Installments* [Doc. No. 14] which permitted Debtor to pay the $313 filing fee in three installments on March 31, 2025, April 30, 2025 and May 30, 2025. As of the date of this Opinion, the second and third installment payments, in the combined amount of $213, remain outstanding.[13]

---

[13] On June 6, 2025, the Court entered an *Order to Show Cause on Dismissal of Case for Failure to Pay Filing Fee* [Doc. No. 78] requiring that Debtor appear at a hearing on July 17, 2025 to show

In his schedules of assets and liabilities [Doc. No. 28], Debtor lists an ownership interest in the Property on his Schedule A/B. He values that interest at $1,000.[14] The only other assets that he lists on his bankruptcy schedules are: (i) $6,000 in personal property, including a bedroom set, a refrigerator, a microwave, a television and some computer equipment, and (ii) a $1,000 security deposit which he claims he paid to "Doshia Banks." In terms of liabilities, Debtor lists no secured creditors on his Schedule D and only $13,086 in unsecured claims on his Schedule F.[15] On his Schedule G, Debtor lists two executory contracts and unexpired leases with Ms. Banks: (i) a "Lodging Rental Agreement," and (ii) a "Webmaster Business Agreement."[16] Contemporaneously with his bankruptcy schedules, Debtor filed a *Chapter 13 Plan* [Doc. No. 30] that proposes to make monthly payments of $250 to the Chapter 13 Trustee in this case.

On April 11, 2025, Movant filed the Motion which, as noted, seeks: (i) relief from the automatic stay with respect to its interest in the Property for "cause" pursuant to sections 362(d)(1) and (d)(2), and (ii) *in rem* relief from the automatic

cause why this case should not be dismissed pursuant to section 1307(c)(2) or Bankruptcy Rule 1017(b)(1) for failure to pay the filing fee in its entirety.

[14] This is contrary to Debtor's statement on his bankruptcy petition and elsewhere that he leases his residence.

[15] The bar date for creditors to file proofs of claim in Debtor's bankruptcy case was May 28, 2025. Not a single creditor filed a claim against the estate.

[16] Notably, no lease agreement with Mr. Williams is listed on Debtor's Schedule G.

stay with respect to the Property alleging that "Debtor has engaged in a scheme to delay, hinder, or defraud creditors that has involved multiple bankruptcy cases affecting the Property." *See* Motion at p. 19. The Motion details nearly a decade of litigation wherein Debtor, Ms. Banks and Mr. Williams involved Movant, this court, the 36th District Court for the City of Detroit, the Wayne County Circuit Court, the Michigan Court of Appeals, and the United States District Court for the Eastern District of Michigan in their abusive escapades.

Debtor filed a *Preliminary Response to Motion For In Rem Relief From the Automatic Stay* [Doc. No. 36] (the "Preliminary Response") on April 28, 2025 and a second *Response to Motion for In Rem Relief From the Automatic Stay* [Doc. No. 49] (the "Response") on May 9, 2025.[17] In the Preliminary Response, Debtor denied the "material allegations in the Motion that suggest bad faith, improper filings, or that Debtor's interest in the subject property is without merit." *See* Preliminary Response at p. 1. He also asserted "a possessory interest and potential equitable claims" regarding the Property. *Id.*

In the more fulsome Response, Debtor asserts that he is a lawful tenant at the Property, "residing under a lease agreement executed with Otis Williams III" and stating that he "has no financial or legal relationship with Ms. Banks." *See* Response

---

[17] Upon the request of the Debtor, the Court granted an extension of his deadline to respond to the Motion until May 9, 2025 [Doc. No. 42].

at p. 1. Notably, no lease agreement with Mr. Williams was attached to the filing or disclosed in Debtor's bankruptcy schedules. To the contrary, as noted above, the schedules disclose a "Lodging Rental Agreement" with Doshia Banks. Also in the Response, Debtor denies the existence of a "scheme" within the scope of section 362(d)(4), untruthfully stating: "This is Debtor's first bankruptcy filing." *Id.* Debtor's primary argument appears to be that there was ongoing quiet title litigation with respect to the Property brought by Mr. Williams against Movant in the Wayne County Circuit Court [Case No. 24-016622-CH] (the "Williams Quiet Title Action") and, thus, the Court "should defer resolution [of the Motion] until the adversary and state court actions have run their course." *Id.* at p. 2.

Movant filed a *Reply In Support of Motion for In Rem Relief From Stay* [Doc. No. 53] (the "Reply") wherein it restated many of the arguments previously made in the Motion. With respect to the pending state court litigation, Movant argues:

> To an (sic) extent Debtor claims that it has a leasehold interest in the Property pursuant to a lease agreement with Ms. Doshia Banks, as listed in Schedule G, and should not be evicted, the eviction determinations should be left to the sound discretion of the Michigan state court to decide.

*See* Reply at p. 3-4. Regarding the alleged "scheme" and section 362(d)(4), Movant states: "it is undisputed that the Property has been the subject of multiple bankruptcy filings, each of them filed for sole reason to delay and hinder [Movant's] rights to possession." *Id.* at p. 5.

A hearing on the Motion was scheduled for May 29, 2025 at 10:00 a.m. Early that morning, Debtor filed a pleading entitled *Debtor's Response to Reply In Support of Motion For In Rem Relief* [Doc. No. 56] wherein he largely restated arguments that he had previously made.[18] He also asserted that Movant should be sanctioned for making scandalous allegations about him in the Reply.[19] That same morning, Debtor also filed a *Combined Motion to Strike Scandalous Material and Motion for Sanctions* [Doc. No. 67] seeking similar relief.[20]

That same morning at 9:23 a.m., an e-mail from a woman named Ashanti' Shennell-El was sent to the Chapter 13 Trustee stating that she was "the lady friend of Harold Jackson Jr" and that, earlier that morning, "while getting dressed, [Debtor] was having chest and back pains and is to be admitted to Providence Hospital for a serious medical emergency and is currently unable to speak, communicate, or appear in court." In the e-mail, Ms. Shennell-El requested an adjournment of the hearing on

---

[18] In the Response, the Debtor asserted that he has a lease with respect to the Property with Mr. Williams. He disclaims any "financial or legal relationship with Ms. Banks." This contradicts his Schedule G. The statement is further contradicted in his response to the Reply, wherein he once again claims to occupy the Property "pursuant to a valid lease agreement with Ms. Doshia Banks."

[19] The Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan contemplate only the filing of a brief, a response and a reply. The local rules make no provision for a party to file a response to a reply, a sur-reply, or a supplemental response without leave of court, and such filings are generally not permitted. *See* L.B.R. 9014-1(f); *see also United States v. Reynolds*, 2013 WL 1278194, at *7 (E.D. Mich. Mar. 27, 2013) (interpreting district court rule parallel to L.B.R. 9014-1 and stating that "[p]arties may *not* file additional or 'supplemental' briefs without leave of Court to do so") (emphasis in original). Nevertheless, because Debtor is acting *pro se*, the Court elected not to strike the filing.

[20] The motion was not before the Court at the June 5, 2025 hearing. Ultimately, the motion was struck by the Court due to Debtor's failure to file the required certificate of service [Doc. No. 80].

the Motion and stated: "I will submit medical documentation from the hospital as soon as it is available." The Chapter 13 Trustee forwarded this e-mail to the Court just minutes before the scheduled hearing on the Motion.

Movant, the Chapter 13 Trustee and the United States Trustee appeared in person at the May 29, 2025 hearing. Debtor did not appear and no one appeared on his behalf. At the outset of the hearing, the Court read Ms. Shennell-El's e-mail into the record. *See* Recording of May 29, 2025 Hearing [Doc. No. 62]. The Court indicated that it would treat the e-mail as a request for an adjournment of the hearing and invited parties in attendance at the hearing to respond to the request.

Counsel for Movant opposed the request, alleging that the request was nothing more than a continuation of the fraudulent scheme to delay the relief sought by Movant. *Id.* at 4:03. She also reported that, earlier that morning, the Wayne County Circuit Court had dismissed the Williams Quiet Title Action with prejudice and, in doing so, had issued a litigation injunction with respect to the Property.

The Court invited Movant to file a supplement on the docket in this case providing more details regarding the ruling of the Wayne County Circuit Court in the Williams Quiet Title Action. Thereafter, Movant filed a *Supplement to Motion For In Rem Relief from Stay* [Doc. No. 72] (the "Williams Supplement") which contains a copy of an order entered by the Wayne County Circuit Court in the Williams Quiet Title Action on June 4, 2025 that: (i) unequivocally rules that Mr.

Williams has no interest in the Property, (ii) holds that the complaint filed by Mr. Williams against Movant was frivolous and in violation of the state law equivalent of Rule 11, and (iii) dismisses the Williams Quiet Title "with prejudice as to all defendants." The court specifically held:

> That Plaintiff, his affiliates, and any other person seeking to claim or enforce an interest in the Property, excluding [Movant], are hereby enjoined from filing any action in Wayne County Circuit Court concerning the Property without approval from the Chief Judge and posting a cash bond in the amount of $8,000.00 with the Clerk of this Court.

In summary, the state court concluded that there has been a scheme by affiliated parties involving multiple frivolous challenges to the title of the Property and it took steps to preclude further litigation with respect to the Property in state court.

The United States Trustee also opposed an adjournment of the hearing. *Id.* at 9:47. The United States Trustee alleged that the Debtor, Ms. Banks and others are involved in several "fractional interest foreclosure rescue schemes that are utilizing both the state bankruptcy courts to stall foreclosure on properties." *Id.* at 8:02. The United States Trustee stated that it supported Movant's request for *in rem* relief with respect to the Property.[21] *Id.* at 8:40.

---

[21] The Court invited the United States Trustee to file a supplement on the docket detailing its position with respect to the Motion. As of the date of this Opinion, no such supplement has been filed.

The Chapter 13 Trustee also opposed the requested adjournment. Counsel for the Chapter 13 Trustee reported that Debtor had failed to appear at his required section 341 meeting of creditors scheduled for May 7, 2025 and that he had failed, to date, to make any plan payments for the benefit of creditors. *Id.* at 11:06.

After a brief recess, the Court granted the requested adjournment due to the Debtor's alleged medical condition, continuing the May 29, 2025 hearing until June 5, 2025 at 10:00 a.m. *See* Continued Recording of May 29, 2025 Hearing [Doc. No. 63]. The Court observed that the hearing on confirmation of Debtor's chapter 13 plan in this case was also scheduled for June 5, 2025 at 10:00 a.m. and, therefore, it was safe to assume that Debtor would be able to participate in a hearing at that time.

The continued hearing on the Motion was held on June 5, 2025. At approximately 10:10 a.m. (after the scheduled start time of the hearing), Debtor filed a document titled *Debtor's Notice of Pendency of Federal Civil Action, Pending Judicial Misconduct Complaint, and Request For Judicial Notice* [Doc. No. 74]. This document advises the Court of a new complaint [Case No. 25-11666-MAG] filed by Debtor on June 4, 2025 in the United States District Court for the Eastern District of Michigan against Movant, Movant's counsel and the Chapter 13 Trustee alleging violations of Debtor's rights to due process, violations of the Americans with Disabilities Act and intentional infliction of emotional distress. The filing also reports that Debtor is preparing a formal complaint against the Court that will be

20

filed with the Michigan Judicial Tenure Commission. Finally, the filing contains what appears to be discharge papers from Ascension Providence Hospital dated May 29, 2025 (a week earlier), presumably to support Debtor's prior adjournment request.

The Court is advised that Debtor sent these same documents to the Chapter 13 Trustee via an e-mail sent at 9:56 a.m. on the morning of the hearing stating:

> Please see the attached judicial notice and complaint for the trustee that I will have someone file for me today. I am still in recovery and not well at all. I received notice of todays hearing n (sic) the mail two days ago and my proof of the hospitalization is attached. I am not recovering well at all and will not be in attendance today. Please inform the court to reschedule the confirmation hearing. I am also having someone pay my plan fees today as well.[22]

These filings and Debtor's correspondence with the Chapter 13 Trustee first came to the Court's attention during a recess of the Court's June 5, 2025 docket. At no time prior to the 9:56 a.m. email was the Court (or, to the Court's knowledge, anyone else) contacted requesting an adjournment of the hearing or seeking permission to appear telephonically.[23]  When the Motion was called at the end of the Court's regular docket (along with the scheduled hearing on confirmation of Debtor's chapter 13 plan), Debtor failed to appear.

---

[22] As of the date of this Opinion, no further plan payments have been made.

[23] Any suggestion that Debtor was unable to request an adjournment, either formally or informally by calling chambers, is belied by the fact that Debtor managed to file the *Debtor's Notice of Pendency of Federal Civil Action, Pending Judicial Misconduct Complaint, and Request For Judicial Notice* [Doc. No. 74] as well as the federal district court complaint referenced therein, one day before the scheduled hearing.

The Court elected to treat Debtor's email to the Chapter 13 Trustee as an informal request for an adjournment of the hearing and entertained argument from the parties in the courtroom regarding whether such relief should be granted. Once again, all parties opposed adjournment of the hearing. This time, the Court denied Debtor's informal and untimely request for an adjournment of the hearing. The Court heard argument from Movant and the United States Trustee on the Motion and, at the conclusion of the hearing, took this matter under advisement.[24]

## IV. Discussion[25]

"Under the Bankruptcy Code, the filing of a bankruptcy petition has certain immediate consequences." *City of Chicago, Illinois v. Fulton*, 141 S.Ct. 585, 589 (2021). First, an estate is created. 11 U.S.C. § 541. The second "immediate consequence" involves the imposition of an automatic stay. *See* 11 U.S.C. § 362(a). Among other things, the automatic stay prohibits "the commencement or

---

[24] The Court adjourned Debtor's plan confirmation hearing until July 17, 2025.

[25] In reaching its conclusion in this matter, the Court takes judicial notice of public records and the docket in this bankruptcy case and in the prior bankruptcy, state and federal cases involving Debtor, Ms. Banks, Mr. Williams, and others referenced herein. *See* Fed R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); 11 U.S.C § 107(a) ("a paper filed in a case under this title and the dockets of a bankruptcy court are public records…."); *see also Lyons v. Stovall*, 188 F.3d 327, 332 n. 3 (6th Cir. 1999) ("it is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record.'"); *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (E.D. Mich. 2018) (stating that a court may take judicial notice of its own docket); *Popple v. Siedzikowski, P.C. (In re Popple)*, 532 B.R. 581, 585 (Bankr. M.D. Pa. 2015) (taking judicial notice of "docket events in a case and the contents of the bankruptcy schedules to determine the timing and status of case events, as well as other facts not reasonably in dispute").

continuation … of a judicial … proceeding against the debtor." 11 U.S.C. § 362(a)(1). Any actions taken in violation of the automatic stay are invalid and shall be voided absent limited equitable circumstances. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993); *see also In re Skandis*, 2022 WL 4587357, at *3 (Bankr. W.D. Mich. Sept. 29, 2022).

However, the Bankruptcy Code also provides a mechanism for lifting the automatic stay where warranted. Specifically, section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic stay], such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization;
>>
>> * * *
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>> (B) multiple bankruptcy filings affecting such real property.

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d).[26]

In this case, Movant seeks relief from the automatic stay under sections 362(d)(1) and (d)(2). It also seeks *in rem* relief with respect to the Property under section 362(d)(4). The court will address each subsection in turn. Regarding the burden of proof, the Bankruptcy Code instructs that in any hearing seeking relief from the automatic stay under section 362(d), "(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

a. **"Cause" Exists for Relief from the Automatic Stay Pursuant to Section 362(d)(1)**

---

[26] Section 362(b)(20) helps effectuate the relief contemplated in section 362(d)(4) by clarifying that the filing of a future bankruptcy petition does not operate as a stay against: "any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing…." 11 U.S.C. § 362(b)(20).

"Cause" for relief from the automatic stay is not defined by section 362(d)(1). Therefore, "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994) (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)). In this case, Movant asserts that "cause" exists for relief from the automatic stay because "as of [the] petition date, Debtor had no right to continued occupancy nor any ownership or equitable interest in the Property, and the [Movant] is the legal owner of the Property and the right of redemption expired." Motion at p.18.

Movant has conclusively established that it is the exclusive owner of the Property. As noted previously, a sheriff's deed reflecting Movant's purchase of the Property at a foreclosure sale was recorded with the Wayne County Register of Deeds in 2016. Six months later, the statutory redemption period expired. Under Michigan's foreclosure statute, "all the right, title and interest which the mortgagor had at the time of the execution of the mortgage vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period." *El-Seblani v. IndyMac Mortg. Servs.*, 510 Fed. Appx. 425, 428 (6th Cir. 2013) (discussing MCL 600.3236).

Moreover, on at least three occasions, the Wayne County Circuit Court has quieted title to the Property in favor of Movant. First, on September 18, 2019, the

state court entered an *Order Granting Plaintiff's Motion for Entry of Default Judgment* which granted a default judgment against Ernest Cornelius, the Williams Family Trust and Otis Williams III and quieted title to the Property in Movant. On December 9, 2022, that same court entered an *Order to Reopen Case, First Amended Order to Quiet Title, and Order Enforcing Settlement Agreement and Expunging Instruments from Wayne County Register of Deeds* wherein it expressly held that "title to the Property is quieted in the name of Wells Fargo Bank, N.A."[27] Most recently, on June 4, 2025 the Wayne County Circuit Court entered an *Order (1) Denying Plaintiff's Emergency Motion to Confirm Circuit Court Jurisdiction and Order District Court To Cease Proceedings; (2) Dismissing Action With Prejudice As To All Defendants; and (3) Enjoining Plaintiff and All Persons From Future Filings Related To The Property Without Compliance With This Order* expressly holding that: "Title to the property commonly known as 16781 Huntington Road, Detroit, MI 48219 previously has been determined by this Court and is owned by [Movant]." So, Movant is indisputably the owner of the Property.

Debtor's story regarding his alleged interest in the Property has changed many times. As noted, in his first bankruptcy case [Case No. 21-49742], the Debtor asserted that he had a $10,000 ownership interest in the Property both on his

---

[27] The order was subsequently affirmed on appeal by the Michigan Court of Appeals on April 25, 2025. *See Wells Fargo Bank, N.A. v. Doshia Banks, Ernest Cornelius, Williams Family Trust, and Otis Williams III*, 2024 WL 1826043 (Mich. App. April 25, 2025).

Schedule A/B [Doc. No. 20] and at the April 20, 2022 hearing on Movant's motion for stay relief. In his second bankruptcy case [Case No. 22-45561], Debtor asserted on his bankruptcy petition [Doc. No. 1] that he leased the Property, asserted on his Schedule A/B that he had a $10,000 ownership interest in the Property, and in a sanctions motion that he filed against Movant [Doc. No. 40] he asserted that he has "possessory rights and an equitable interest" in the Property.

In this case, Debtor asserted on his bankruptcy petition [Doc. No. 1] that he leased the Property. In his schedules of assets and liabilities [Doc. No. 28], he again lists an ownership interest in the Property on his Schedule A/B. This time, however, he values that interest at $1,000. Debtor also claims to lease the Property pursuant to a "Lodging Rental Agreement" with Ms. Banks and asserts that he paid her a $1,000 security deposit related to such lease. In his Response to the Motion, Debtor asserts that he is a lawful tenant at the Property, "residing under a lease agreement executed with Otis Williams III" and, incredibly, given the two executory contracts with Ms. Banks that he lists on his Schedule G, asserts that he "has no financial or legal relationship with Ms. Banks."

To the extent that Debtor claims an ownership interest in the Property, the quiet title rulings from the Wayne County Circuit Court indisputably hold that he does not. That court determined that Movant is the sole owner of the Property. Moreover, any alleged leasehold interest asserted by Debtor with respect to the

Property would necessarily come from an agreement with either Ms. Banks or Mr. Williams who, per the state court rulings, had no interest in the Property to convey. Finally, it is notable to the Court that no party has at any time, produced any evidence to support any leasehold interest being conveyed to Debtor. Given the foregoing, the Court finds that no lease agreement, valid or otherwise, exists.[28]

The Court concludes that Debtor is a squatter at the Property. He has no legal right to occupy the Property but, somehow, has managed to reside there for at least four years and perhaps much longer, unabated, due to repeated bankruptcy filings and other vexatious litigation that has hindered and delayed Movant's efforts to evict him. The Court thus holds that "cause" exists for granting Movant relief from the automatic stay pursuant to section 362(d)(1).

Additional "cause" for relief from the automatic stay exists because of the Eviction Action which has now been pending for four years. Although the frivolous and redundant Williams Quiet Title Action has been dismissed with prejudice, the Eviction Action still needs to be brought to conclusion. The Court agrees with Movant that that action is the appropriate forum for Debtor to assert any right (dubious as it may be) to reside at the Property. *See, e.g.*, *In re Basrah Custom*

---

[28] In Michigan, the statute of frauds mandates that a real property lease for a term longer than one year must be in writing and signed by someone lawfully authorized to enter into such lease. *See Zurcher v. Herveat*, 238 Mich. App. 267, 277 (1999) (discussing MCL 566.108). Debtor's bankruptcy filings suggest that he has resided at the Property for many years. Thus, any purported oral lease likely would not be enforceable.

*Design, Inc.*, 600 B.R. 368, 384 (Bankr. E.D. Mich. 2019) (stay relief is appropriate "to permit th[e] owner [of property] to prosecute an eviction action in an appropriate non-bankruptcy court, to obtain possession of the property.").

In *Garzoni v. K-Mart Corp. (In re Garzoni)*, 35 Fed. Appx. 179, 181 (6th Cir. 2002)*,* the Sixth Circuit Court of Appeals directed bankruptcy courts to consider the following six factors to determine whether to grant stay relief to permit non-bankruptcy litigation to continue: 1) judicial economy; 2) trial readiness; 3) the resolution of preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. For the reasons already detailed herein, the Court finds that each of the foregoing factors weigh in favor of granting the Motion.

Thus, the Court finds that ample "cause" exists for granting Movant relief from the automatic stay pursuant to section 362(d)(1).

### b. Relief from the Automatic Stay is Likewise Warranted Under Section 362(d)(2)

Because "cause" exists for relief from the automatic stay under section 362(d)(1), the Court need not address Movant's arguments under section 362(d)(2) in much detail. The Court has held, relying in part on determinations by the Wayne County Circuit Court in multiple quiet title actions, that Movant is the sole owner of the Property. Debtor does not have an equity interest in the Property. Pursuant to

29

section 362(g), then, the burden of proof shifts to Debtor to establish that the Property is necessary to an effective reorganization. 11 U.S.C. § 362(g). Debtor failed to make any arguments in this regard in his filings. And he failed to attend either of the hearings on the Motion. Because Debtor has not met his burden to show that the Property is necessary to an effective reorganization, relief from the automatic stay is likewise warranted under section 362(d)(2).

   c. ***In Rem* Relief Under Sections 362(d)(4) and 105(a) Is Appropriate Given The Continuing Scheme to Hinder, Delay Or Defraud Movant Through Repeated Bankruptcy Filings**

Section 362(d)(4) became part of the Bankruptcy Code in 2005 with the enactment by Congress of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[29] One of the clear purposes of BAPCPA was to "deter serial and abusive bankruptcy filings." *See* H.R. Rep. No. 109–31(I), at 1 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89. The legislative history to BAPCPA states that section 362(d)(4) was specifically enacted to "reduce abusive filings" that involved "multiple bankruptcy filings affecting … real property." *Id.* at 138.

Section 362(d)(4) requires stay relief where the court finds that the filing of the petition was part of a "scheme to delay, hinder, or defraud creditors." 11 U.S.C. § 362(d)(4). This scheme must consist of either: (i) a transfer of ownership in real

---

[29] *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

property without the approval of the secured party or the court, or (ii) serial bankruptcy filings involving a parcel of real property. *Id.* Stay relief granted under section 362(d)(4) is binding in any future bankruptcy case filed with respect to the real property at issue within two years after entry of the order granting *in rem* relief. *Id.*; *see also* 11 U.S.C. § 362(b)(20).[30] For the order to be effective for the two-year period against any party asserting an interest in the property, the creditor must record a certified copy of the order in compliance with applicable state law regarding notices of interests or liens in real property. *Id.*

i. **The Legal Standard for *In Rem* Relief**

Courts have held that a creditor seeking *in rem* relief with respect to real property "bears the initial burden to establish a *prima facie* case as to all of the elements" of section 362(d)(4). *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009). The creditor must prove that:

(1) the debtor engaged in a scheme,
(2) to delay, hinder *or* defraud the creditor, and
(3) which involved either the transfer of property without the creditor's consent or court approval, *or* multiple filings.

*In re Lee*, 467 B.R. 906, 920 (B.A.P. 6th Cir. 2012) (emphasis added).[31]

---

[30] The statute does permit a debtor in a subsequently filed bankruptcy case to move for relief from the *in rem* order based upon changed circumstances or for good cause shown, after notice and a hearing. 11 U.S.C. § 362(d)(4).

[31] Section 362(d)(4) was amended in 2010 to change the wording of the statute from "delay, hinder, and defraud" to "delay, hinder, or defraud." *See* Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat. 3557 (2010). As a result, decisions prior to 2010 holding that there

31

A scheme, for purposes of section 362(d)(4), is "an intentional artful plot or plan to delay, hinder [and] defraud creditors." *In re Duncan & Forbes Dev., Inc.,* 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006); *see also* BLACK'S LAW DICTIONARY 1546 (10th ed. 2014) (defining scheme as: "1. A systemic plan; a connected or orderly arrangement, esp. of related concepts, 2. An artful plot or plan, usu. to deceive others."). Stated differently, a "scheme" is "an intentional plan to accomplish a particular result." *In re Anderson*, 594 B.R. 509, 515 (Bankr. D. Me. 2018).

As one court noted, "the scheme § 362(d)(4) is intended to stop—[is] 'an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral.'" *In re Stevenin*, 2015 WL 1640475, at *2 (Bankr. D.R.I. April 10, 2015). Such a scheme can be tricky to prove. As the United States Bankruptcy Court for the Northern District of Illinois observed:

> a determination of whether a scheme exists will almost always have to be one of extrapolation. No debtor is expected to admit to having conducted a scheme. Rather, the court must attempt to deduce a scheme from the facts.

*In re Briggs*, 2012 WL 3780542, at *5 (Bankr. N.D. Ill. Aug. 31, 2012); *see also General Motors Co. v. Heraud (In re Heraud)*, 410 B.R. 569, 578-79 (Bankr. E.D. Mich. 2009) ("Because actual intent is difficult to prove directly, it may be

---

was a requirement to show an intent to defraud are no longer authoritative on this element. *See In re Lee*, 467 B.R. at 920 n.5.

established from circumstantial evidence or inferred from the debtor's conduct. Just one wrongful act may be sufficient to show actual intent.... However, a continuing pattern of wrongful behavior is a stronger indication of actual intent.").

To "delay" or "hinder" a creditor within the meaning of section 362(d)(4) is to unlawfully forestall a creditor's efforts to collect on a debt or recover its property. *See In re Duncan & Forbes Dev., Inc.,* 368 B.R at 34. This Court agrees with the numerous bankruptcy courts that have held that intent to delay or hinder can be established by the existence of multiple voluntary bankruptcy filings commenced on the eve of state court foreclosure or eviction hearings. *See, e.g.*, *In re Stevenin*, 2015 WL 1640475, at *2 (Bankr. D.R.I. April 10, 2015) ("the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a permissible inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors."); *In re Hymes*, 2013 WL 653060, at *5 (Bankr. D. Alaska Feb. 20, 2013) ("Courts have consistently recognized that repeated bankruptcy filings made on the eve of successive foreclosure attempts constitute strong evidence of an intent to delay and hinder secured creditors"); *In re Macaulay*, 2012 WL 2919154, at *4 (Bankr. D.S.C. July 16, 2012) ("the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a permissible inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors."); *In re Henderson*, 395 B.R. 893, 902 (Bankr.

33

D.S.C. 2008) (a court may infer an intent to hinder or delay from serial bankruptcy filings commenced for the sole purpose of stopping foreclosure actions); *In re Abdul Muhaimin*, 343 B.R. 159, 170 (Bankr. D. Md. 2006) ("The repeated nature of the various filings by Debtor, each filed just prior to a foreclosure sale scheduled by the secured creditor or after foreclosure proceedings were initiated by the secured creditor, constitutes a scheme by each debtor … to hinder creditors").

In addition to the existence of multiple filings, other factors have also been considered by bankruptcy courts in determining whether a "scheme to delay, hinder, or defraud" exists. For example, in *In re Syverson*, 638 B.R. 765, 769 (Bankr. E.D. Wis. 2022), the court focused on the lack of prosecution of the debtor's bankruptcy cases, observing that she had failed "to fulfill the Bankruptcy Code's most basic obligations - including failure to timely file her schedules, failure to timely file a plan, or failure to attend a § 341 meeting," thereby severely undercutting "any suggestion that debtor has attempted to meet her obligations in bankruptcy and treat her creditors fairly." Similarly, in *In re Kearns*, 616 B.R. 458, 467-68 (Bankr. W.D.N.Y 2020), the court found that the debtor "engaged in a calculated scheme to delay and hinder" a creditor based upon: (i) the debtor's numerous bankruptcy filings, (ii) the timing of those filings hours before a state foreclosure sale, (iii) the skeletal nature of the filings, (iv) the debtor's failure to attend the 341 meeting of creditors in most cases, and (v) his failure to make required post-petition payments.

The only appellate court to address section 362(d)(4) in this circuit is the Bankruptcy Appellate Panel of the Sixth Circuit. In *In re Lee,* 467 B.R. at 906, the debtor had filed three skeletal bankruptcy petitions, all of which were timed to forestall a pending foreclosure action with respect to a parcel of real property. The secured creditor sought *in rem* relief pursuant to sections 362(d)(4) and 105(a). *Id.* at 913. Noting that the debtor had failed to seriously prosecute any of her prior bankruptcy cases, the bankruptcy court granted the requested relief, stating:

> And it seems to this Court that you have been using bankruptcy as a buffer to prevent the foreclosure proceedings from going forward and that is not what this bankruptcy court is supposed to do. It's here for those who come before the Court in an honest and forthright manner to be able to get relief in bankruptcy from the oppression of their debt, but they've got to do that in an honest fashion and in a forthright fashion. And from what I see before me and the record here, that's not quite what's been happening here.

*Id.* at 914. The debtor appealed to the bankruptcy appellate panel.

The bankruptcy appellate panel affirmed the bankruptcy court's order granting *in rem* relief from the automatic stay pursuant to sections 362(d)(4) and 105(a). The finding of a "scheme" under section 362(d)(4), the appellate panel found, was appropriate based upon the strategic bankruptcy filings of the debtor to avoid foreclosure, the fact that there was no change of circumstances between the prior bankruptcy cases, and the debtor's inability to fund the plan. *Id.* at 921.

ii.    **Application of the Legal Standard to the Present Case**

The fact patterns in each of the cases discussed above and in this case are substantially the same. In all these cases, the debtor is not an "honest but unfortunate debtor" seeking to utilize the bankruptcy process to reorganize his or her affairs and pay creditors what he or she can. Rather, the debtor is using repeated bankruptcy filings as a litigation tactic to delay a party with a rightful interest in real property from proceeding to exercise its state court remedies. This is precisely the behavior that section 362(d)(4) was enacted to stop. Applying the factors detailed above, the Court holds that Movant has carried its burden to show that this bankruptcy filing is part of a scheme to delay, hinder or defraud Movant that involved multiple bankruptcy filings.[32]

This is Debtor's third bankruptcy filing seeking to forestall the Eviction Action. Ms. Banks and Mr. Williams have collectively filed another five bankruptcy cases since 2017 for that same purpose. As detailed above, none of these individuals have confirmed a plan (much less obtained a discharge) in any of their bankruptcy cases. The cases were all dismissed due to their failure to pay filing fees, make plan

---

[32] The Court agrees with those courts that have held that, based on the record before it of which judicial notice has been taken, an evidentiary hearing is not necessary for purposes of determining whether a "scheme to delay, hinder, or defraud" has occurred. *See, e.g.*, *In re Kearns*, 616 B.R. 458, 467-68 (Bankr. W.D.N.Y. 2020); *In re Valid Value Props.*, 2017 WL 123751, at *3 (Bankr. S.D.N.Y. Jan. 5, 2017). In this case, the nine years of frivolous and vexatious litigation in various state and federal courts detailed above speaks for itself. To quote a famous song: "You don't need a weather man to know which way the wind blows." Bob Dylan, "Subterranean Homesick Blues" (1965).

payments or file appropriate documentation. In five of the prior cases, a section 341 meeting of creditors was not held.

Each of these bankruptcy filings was also strategically timed. The bankruptcy cases had very little overlap between them so as to maximize the benefits of the automatic stay with each filing. When one debtor's case was dismissed, a different debtor filed, thereby avoiding the repeat filer limitations with respect to the automatic stay set forth in sections 362(c)(3) and (4). Moreover, most of the bankruptcies were filed on the eve of hearings in the Eviction Action, thereby preventing that litigation from moving forward. Although they have lost every step of the way, these individuals have managed to continue this scheme for close to a decade.

Even if the Court were to review only Debtor's prior bankruptcy filings, the result would be no different. Debtor's first bankruptcy was filed shortly before a scheduled hearing in the Eviction Action. Debtor did not receive a discharge in that case because he failed to file required documents with the court. Debtor's second case was filed two days before a hearing on a motion to reopen the Eviction Action. This time, Debtor's case was dismissed because, despite the case pending for seven months, Debtor had failed to remit a single plan payment. The instant case likewise was filed on the eve of a scheduled hearing in the Eviction Action. To date, the Debtor has failed to make a single plan payment for the benefit of creditors. He has

only paid one-third of the filing fee required by 28 U.S.C. § 1930. He did not attend the section 341 meeting of creditors, the hearings on this Motion, or his scheduled chapter 13 plan confirmation hearing. There has been no substantive change in circumstances between the three cases and there is nothing on the docket that would suggest that this case is anything other than yet another litigation delay tactic.

Based on the foregoing, the Court finds that the evidence before it establishes that this bankruptcy filing was part of a scheme involving multiple bankruptcy filings commenced to delay, hinder or defraud Movant with respect to its interests in the Property.

### iii. Equitable Relief Under Section 105(a)

The language of section 362(d)(4) contemplates the provision of *in rem* relief with respect to real property in favor of a "creditor whose claim is secured by an interest in such real property." 11 U.S.C. § 362(d)(4). In this case, Movant is not a creditor at all. Rather, as noted, it is the title owner of the Property. The bankruptcy cases affecting the Property were not commenced to stay a creditor foreclosure action (as in many of the cases discussed above) but, rather, were filed to thwart an eviction action commenced after a lawfully completed foreclosure action. That begs the question, does section 362(d)(4) apply when the party seeking (and entitled to) relief is not a secured creditor? The Court holds that section 362(d)(4), when

supplemented by the Court's equitable powers in section 105(a), allows it to grant *in rem* relief to an owner of real property such as Movant.

Courts have long held that a bankruptcy court has authority to grant *in rem* relief to prevent an abuse of process. *See, e.g.*, *In re Henderson*, 395 B.R. at 901 (citing cases). This authority stems from bankruptcy courts' broad equitable powers under section 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be considered to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to … prevent an abuse of process.

11 U.S.C. § 105(a); *see also Pepper v. Litton*, 308 U.S. 295, 305 (1939) (the bankruptcy court's equitable powers "have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.").

Indeed, bankruptcy courts have regularly granted *in rem* relief where, as here, the party moving for such relief is not a secured creditor. In some cases, courts granted relief under section 362(d)(4) to the title owner of the real property without addressing this particular issue. *See, e.g.*, *In re Montalvo*, 416 B.R. 381 (Bankr. E.D.N.Y. 2009) (granting relief under section 362(d)(4) where the moving party was the owner of the property following a foreclosure sale); *In re Sanders*, 664 B.R. 371 (Bankr. M.D. Ala. 2024) (same, but also granting relief under section 105(a)); *In re*

*Corriette*, 2022 WL 1038165, at \*3 (Bankr. E.D.N.Y. Apr. 5, 2022) (granting 362(d)(4) relief where debtor was simply a "holdover squatter" and his multiple bankruptcy filings prevented his eviction from Movant's property); *In re Kurimsky*, 2021 WL 2621891 (Bankr. D. Conn. June 24, 2021) (same).

Other courts have acknowledged that while *in rem* relief with respect to real property could not explicitly be granted under section 362(d)(4) in favor of an owner of such property, *see In re McCray*, 342 B.R. 668, 669 (Bankr. D. D.C. 2006), such relief could be awarded under section 105(a) to prevent a continued abuse of the bankruptcy process. For example, in *In re Dawood*, 602 B.R. 640 (Bankr. E.D. Mich. 2019), Judge Thomas J. Tucker stated:

> The Court has authority to order such *in rem* relief under 11 U.S.C. § 105(a) and by analogous authority under 11 U.S.C. § 362(d)(4)…. Section 362(d)(4) does not literally apply here, because the Court is not acting on the motion of a secured creditor. But when combined with § 105(a), § 362(d)(4) does lend support, by analogy, to the *in rem* relief being granted here. Drawing on the words of § 362(d)(4), it is obvious to this Court that in this case, the "filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved ... multiple bankruptcy filings affecting ... real property." This abuse of the bankruptcy system must not continue.

*In re Dawood*, 602 B.R. at 605; *see also In re McCray*, 342 B.R. at 670 (holding that section 362(d)(4) does not prevent bankruptcy courts from using section 105(a) to "prevent the harm from abusive filings. If anything, the 2005 amendments evidence a congressional intent that the courts crack down on abusive filings by debtors."); *In re Robles*, 2014 WL 3715092, at \*1 (Bankr. N.D. Cal. July 24, 2014)

40

("Movant is an agent for the owner of the property, and therefore § 362(d)(4) does not apply. Nevertheless, the Court retains the power to grant in rem relief pursuant to § 105(a)"); *In re Traub*, 2014 WL 1779261, at *4 (Bankr. S.D. Ga. May 5, 2014) (same); *In re In re Henderson*, 395 B.R. at 901-904 (same).

This Court joins the aforementioned courts in utilizing section 105(a) to supplement section 362(d)(4) for purposes of granting *in rem* relief to a party that does not technically fall within the plain language of the statute. While Movant, as the owner of the Property, may not fit squarely within the statutory text, the Court's holding today certainly fits within the spirit of what section 362(d)(4) set out to accomplish, which was to "deter serial and abusive bankruptcy filings." *See* H.R. Rep. No. 109–31(I), at 1 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89.

Section 105(a) authorizes bankruptcy courts to *sua sponte* take action to prevent an abuse of the bankruptcy process. The Court struggles to conceive of a fact pattern where the *in rem* relief contemplated by section 105(a) would be more appropriate than in the present case. The Debtor and his conspirators have engaged in frivolous litigation for nearly a decade. Eight different bankruptcy cases have been filed, each of which constituted an abuse of the bankruptcy system. Countless hours have been spent by numerous lawyers and courts responding to this scheme. Because the abuse of process must come to an end, the Court will employ section 105(a) to supplement section 362(d)(4) and grant *in rem* relief in favor of Movant.

41

## V. Conclusion

Our bankruptcy laws can provide an "honest but unfortunate debtor" with badly needed shelter from the storm and a fresh start. To preserve the many benefits that bankruptcy can provide, there must be consequences where, as here, a debtor has conducted himself in a manner inconsistent with the purposes of the Bankruptcy Code.

For the reasons set forth herein, the Court concludes that Movant is entitled to relief from the automatic stay pursuant to sections 362(d)(1) and (d)(2). Moreover, because the filing of the Debtor's petition was part of a scheme to delay, hinder or defraud Movant, which scheme involved multiple bankruptcy filings, grounds exist for the Court to grant *in rem* relief under sections 362(d)(4) and 105(a).

Given the Debtor's lack of any colorable interest in the Property, the Court also finds that cause exists to order that the temporary stay imposed under Bankruptcy Rule 4001(a)(3) is waived. Accordingly, the Court's Order, entered separately from this Opinion, will take effect immediately upon entry.

**Signed on June 17, 2025**



/s/ Paul R. Hage

**Paul R. Hage**
**United States Bankruptcy Judge**